LIFE OF THE LAND; et al., Plaintiffs-Appellees, Cross Appellants, *v.* JOHN A. BURNS, in his capacity as Governor, State of Hawaii; Defendant, Cross Appellee, and RICHARD HORIE AND GEORGE HASEGAWA, individually and as representatives of all those similarly situated; et al., Defendants-Appellants, Cross Appellees

NO. 5984

JUNE 5, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Defendants-appellants Richard Horie, George Hasegawa, Dr. George Tanaka, Akira Misawa, Dr. Cesar B. DeJesus and James M. Hirata (hereinafter appellants) appeal from an

order and judgment entered by the circuit court of the first circuit on May 5, 1975, which adjudged that all individuals who were members of various state boards and commissions who had served beyond eight consecutive years thereon, were serving illegally in contravention to and in violation of HRS[1] § 26-34.[2] That order and judgment further declared that any member of any state board or commission which is subject to HRS § 26-34 is prohibited from serving on such board or commission in his official capacity beyond eight consecutive years. We vacate the order and judgment.

We must also dispose the cross appeal filed by plaintiffs-appellees Life of the Land, a Hawaii non-profit corporation, Hawaii Women's Political Caucas [sic], an unincorporated association, Tony Hodges, Robert Gould, Sophie Ann Aoki and Hilde Cherry (hereinafter appellees) from (1) the order of February 28, 1974, which denied appellees' motion to maintain a class action against defendant, John A. Burns, in his capacity as Governor of the State of Hawaii, and against appellants and three classes of defendants, but which granted to the appellees the right to maintain such class action solely as to a class of defendants who allegedly were

---

[1] This reference is to Hawaii Revised Statutes and specifically to the 1976 replacement.

[2] The pertinent parts of HRS § 26-34 are in the first two paragraphs which read:

§ 26-34 *Selection and terms of members of boards and commissions*. The members of each board and commission established by law shall be nominated and, by and with the advice and consent of the senate, appointed by the governor. Unless otherwise provided by this chapter or by law hereafter enacted, the terms of such members shall be for four years; provided, that the governor may reduce the terms of those initially appointed so as to provide, as nearly as can be, for the expiration of an equal number of terms at intervals of one year for each board and commission; and provided further that the terms of two of the members of the board of regents of the University of Hawaii shall be for two years. Each term shall commence on January 1 and expire on December 31. After November 25, 1959, no person shall be appointed consecutively to more than two terms as a member of the same board or commission; provided, that membership on any board or commission shall not exceed eight consecutive years.

A vacancy occurring in the membership of any board or commission during a term shall be filled for the unexpired term thereof, subject to article IV, section 6 of the Constitution of the State.

members of state boards and commissions subject to HRS §
26-34, and who allegedly had served beyond eight years as
such members; and (2) the order of the court which granted
the motion of defendant, John A. Burns, to dismiss the
amended complaint against him. We affirm these orders of
the court below.

In the instant case the complaint was filed by appellees on
November 20, 1973, against defendant, John A. Burns, as
such Governor, and the appellants, individually and as repre-
sentatives of all those similarly situated. It prayed for the
issuance of a judgment by the court that the named individual
defendants and members of the classes they represent have
been and are unlawfully holding their offices; and that the
court issue a permanent injunction against the named indi-
vidual defendants and the members of the classes they rep-
resent to restrain them from holding themselves out and
acting as members of various boards and commissions sub-
ject to HRS § 26-34, and to exclude and prohibit them from
holding such offices. The complaint additionally requested
the court to issue a permanent mandatory injunction against
defendant, John A. Burns, to order him to promptly reappoint
all defendants and those serving on such boards and commis-
sions with expired terms who are eligible for reappointment;
and to further appoint others to replace those who are ineligi-
ble for reappointment; and to promptly nominate and appoint
other qualified persons to fill the various positions on each
and every board or commission which are presently vacant.
The appellants and defendant, John A. Burns, filed an an-
swer to this complaint on December 20, 1973.

The appellees subsequently amended their complaint to
include therein a request that the court render a declaratory
judgment on the interpretation of HRS § 26-34, pursuant to
HRS § 632-1.[3]

---

[3] HRS § 632-1 reads as follows:

*Jurisdiction; controversies subject to.* In cases of actual controversy, courts of
record, within the scope of their respective jurisdictions, shall have power to
make binding adjudications of right, whether or not consequential relief is, or at
the time could be, claimed, and no action or proceeding shall be open to objection

It is clear from the record before us in this case that on the date the complaint was filed all of the appellants were serving as members of several state boards and commissions. The record further shows that appellants Horie and Hasegawa were appointed as members of the Commission on Transportation on June 16, 1967, and June 17, 1967, respectively; that although their respective terms expired on December 31, 1970, and December 31, 1969, they were nevertheless serving on such commission until November 27, 1973, when they were replaced by the Governor; that appellant Tanaka was appointed as a member of the Board of Health on December 3, 1965; that he was thereafter on June 5, 1969, reappointed to a second consecutive term on the same board for a term to expire on December 31, 1972; that appellant Misawa was appointed as a member of the Board of Planning and Economic Development on December 6, 1966; that he was thereafter on May 24, 1968, reappointed to a second consecutive term on the same board for a term to expire on December 31, 1971; that although appellants Tanaka and Misawa had

---

on the ground that a judgment or order merely declaratory of right is prayed for; provided, that declaratory relief may not be obtained in any district court, or in any controversy with respect to taxes, or in any case where a divorce or annulment of marriage is sought. Controversies involving the interpretation of deeds, wills, other instruments of writing, statutes, municipal ordinances, and other governmental regulations, may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right.

Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, a remedy equitable in nature, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment in any case where the other essentials to such relief are present.

served two consecutive terms on the same boards, they have continued to serve thereon until they were replaced by the Governor;[4] that appellant DeJesus was appointed as a member of the Board of Health on May 15, 1964; that he was thereafter on May 25, 1967, reappointed to a second consecutive term on the same board for a term to expire on December 31, 1970; that as of May 16, 1972, he had served as a member of the Board of Health for eight consecutive years; that he continued to serve and was not replaced on that board by the Governor until November 27, 1973; that appellant Hirata was appointed as a member of the Board of Taxation Review, First Taxation Division on May 4, 1964; that he was thereafter on February 11, 1966, reappointed to a second consecutive term on the same board for a term to expire on December 31, 1969; that as of May 5, 1972 he had served as a member of that same board for eight consecutive years; and that he continued to serve and was not replaced on that board by the Governor until December 7, 1973.

From the examination of the allegations of the complaint and the subsequent proceedings in the court below, it appears that appellees had instituted a class action against all persons who were similarly situated with appellants when this action was filed. Appellants Horie and Hasegawa, both of whom were serving as holdover members on the Commission on Transportation, even after their first terms had expired, and the members of their class, were grouped under class I; appellants Horie and Hasegawa were named as the representatives of class I defendants. Appellants Tanaka and Misawa, whose second consecutive terms had expired and who were nevertheless serving on their respective boards, but whose service had not exceeded more than eight years, and the members of their class, were placed under class II; appellants Tanaka and Misawa were named as the representatives of class II defendants. Appellants DeJesus and Hirata, who were holdover members whose second consecutive terms had expired and were nevertheless serving on their respective

---

[4] Appellant Tanaka was replaced by the Governor on November 27, 1973; and appellant Misawa was replaced on December 7, 1973.

boards beyond eight consecutive years, and the members of their class, were placed under class III; and appellants De-Jesus and Hirata were named as the representatives of class III defendants.

Shortly after the complaint was filed but before the appellees had filed their motion on January 9, 1974, to maintain class action and to substitute each party defendant with a nominal John Doe, defendant John A. Burns, the Governor, had replaced each of the appellants from their respective boards and commissions. On February 28, 1974, the court below entered an order for the maintenance of this action as a class action against defendants solely as to that class of persons who were allegedly serving as members of boards and commissions beyond eight consecutive years at the time the complaint was filed; and that order provided that such class action be maintained with a John Doe as a representative of that class. This order further authorized the appellees to amend the prayer of their complaint by including a request for a declaratory judgment.

Thereafter, on March 25, 1974, the court granted defendant Burns' motion to dismiss the complaint as to him. However, it denied appellants' motion to dismiss the complaint as to them on the ground of mootness.

I.

The appellants contend before us that the trial court had no jurisdiction to adjudge the members of class III defendants to be holding their offices illegally because the issue was moot. The appellees argue that even if the issue was moot, the instant action contains "recurring issues of public interest," *Women Strike for Peace v. Hickel*, 420 F.2d 597, 604 (D.C. Cir. 1969); *see Johnston v. Ing*, 50 Haw. 379, 441 P.2d 138 (1968); though the appellants may have on this occasion complied with appellees' demands, they are "free to return to their old ways." *Gray v. Sanders*, 372 U.S. 368, 376 (1963). For these reasons, appellees would have us affirm the trial court's denial of appellants' motion to dismiss for mootness and affirm the judgment declaring the defendants in this

class have held their offices illegally in violation of HRS §
26-34.

We hold that this case was moot at the time the trial court
ruled that the members of this class of defendants held offices
illegally. *League of Women Voters v. Doi,* 57 Haw. 213, 552
P.2d 1392 (1976); *Johnston v. Ing, supra; Territory v. Damon,*
44 Haw. 557, 356 P.2d 386 (1960); *cert. denied* 368 U.S. 838
(1961); *Territory v. Aldridge,* 35 Haw. 565 (1940); *Murphy v.
McKay,* 26 Haw. 171 (1921). This court said in *Territory v.
Aldridge, supra,* 35 Haw. at 567, that "[a] case is moot when
the question to be determined is abstract, one that does not
rest on existing facts or rights." And it further quoted in that
case from *Hudspeth v. Commonwealth,* 204 Ky. 606, 265 S.W.
18 (1924), that " '[c]ourts will not consume time deciding
abstract propositions of law or moot cases, and have no
jurisdiction to do so.' " 35 Haw. at 568. We further stated in
*Territory v. Damon, supra,* that "[t]his court may not decide
moot questions or abstract propositions of law." 44 Haw. at
562.

Moreover, before a court may proceed with a class action,
it is essential that a class must exist. *See East Texas Motor
Freight v. Rodriguez,* 431 U.S. 395 (1977); 7 C. Wright and A.
Miller, *Federal Practice and Procedure:* Civil sec. 1760 at 579
(1972). It is undisputed in this record that there were abso-
lutely no holdover members serving on boards and commis-
sions more than eight years, who could have become mem-
bers of class III; that all holdover members who had served
beyond eight years had been replaced by the time the case
was heard on its merits. Therefore, not only was the issue of
the legality of the holdover status of the members of boards
and commissions as to this class nonexistent at the time the
trial court declared its interpretation of HRS § 26-34, but no
members in class III existed.

We stated in *Johnston v. Ing, supra,* 50 Haw. at 381, 441
P.2d at 140:

> There is a well settled exception to the rule that appel-
> late courts will not consider moot questions. When the
> question involved affects the public interest, and it is
> likely in the nature of things that similar questions arising

in the future would likewise become moot before a needed authoritative determination by an appellate court can be made, the exception is invoked.

A similar view was stated in *Valentino v. Howlett*, 528 F.2d 975 at 979-980 (7th Cir. 1976):

There is an exception to this precept, however, that occurs in cases involving a legal issue which is capable of repetition, yet evading review. The phrase, "capable of repetition, yet evading review," means that a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because of the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit.

We do not believe that the exception to the mootness rule is applicable in the instant case. It was conceded by appellees during the oral argument that under HRS § 26-34, the governor would be entitled to at least a reasonable time after a term expires to nominate a qualified person to a board or commission. According to HRS § 26-34, it is necessary for the governor to submit the name of the person nominated to the senate for confirmation. Therefore, the subject of appointment of members to boards and commissions must necessarily be considered to be the joint responsibility of the governor and senate, and the senate is privileged to inquire the governor's office about the appointment of any member whose term has expired beyond such reasonable time. We believe that the senate would be quick to expose the governor if he engages in tactics which would unduly delay the appointment of members to boards and commissions.

In light of the statements in the affidavit of the administrative assistant in the office of the governor, which is part of this record, "[t]hat holdover members of boards and commissions are in the process of being renominated and reappointed or are being replaced," a fact accomplished for this class, it is highly improbable that there will be in the future any such holdover members. *See Rappaport v. Little League Baseball, Inc.,* 65 F.R.D. 545 (D. Del. 1975).

Because the issue was moot and the appellees failed to show that the subject complained of could "reasonably be expected to recur," *United States v. Phosphate Export Assn.,* 393 U.S. 199, 203 (1968), we hold that the trial court lacked jurisdiction to render a judgment on the legality of the members of boards and commissions holding office after the expiration of eight years. *See SEC v. Medical Committee for Human Rights,* 404 U.S. 403 (1972); *Hall v. Beals,* 396 U.S. 45 (1969).

II

In the instant case the trial court partially granted the appellees' motion to maintain class action and to substitute each representative party defendant with a nominal John Doe by allowing appellees to proceed with this action as a class action only as to those who were members in class III. Appellees argue that the net result of such an action by the court was to dismiss from this case two of the classes of defendants sought to be included by appellees.[5] They contend that the non-inclusion of these classes constituted reversible error. No authority, however, has been cited by appellees in their briefs or in argument to sustain this contention.

The question of whether a suit shall be allowed to proceed as a class action is one of fact, to be determined by the trial judge within his discretion. *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50 (8th Cir. 1977); *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304 (9th Cir. 1977); *Flores v. Kelley,* 61 F.R.D. 442, 446 (N.D. Ind. 1973); *Weisman v. MCA, Inc.,* 45 F.R.D. 258 (D. Del. 1968); *Graybeal v. American Savings and Loan Association,* 59 F.R.D. 7 (D.D.C. 1973); *see generally* 7 C. Wright and A. Miller, *Federal Practice and Procedure:* Civil sec. 1759 at 575 (1972). It is the plaintiff's burden to show that

---

[5] The trial court by dismissing these two classes of defendants, should have also dismissed from this action appellants Horie, Hasegawa, Tanaka and Misawa.

all requirements of H.R.C.P. Rule 23(a)[6] have been met, *Boyd, supra; Doninger, supra; Flores, supra; Graybeal, supra;* even if the class sought to be created is a defendant class. *Tucker v. City of Montgomery Board of Commissioners,* 410 F. Supp. 494, 499 (M.D. Ala. 1976) (three judge panel).

Rule 23(a)(1) requires that the class be so numerous that the joinder of all members would be impracticable. While many state courts have held numerosity to be a number exceeding a hundred, 3B J. Moore, *Federal Practice* ¶ 23.04 (1977), the requirement has been satisfied by as few as thirteen potential individuals who may be included in a class. In *Dale Electronics, Inc. v. R.C.L. Electronics, Inc.,* 53 F.R.D. 531 (D.N.H. 1971), the court said that thirteen would have been an insufficient number of persons for a finding of numerosity by normal class standards. However, that case allowed class action because joinder was not only impracticable but impossible because the defendants were from, *inter alia,* California, New York and Nebraska. "[I]t is not number alone but whether or not the number makes joinder impracticable that is the test." *Id.,* at 534.

In the instant case we find no substantial evidence in the record what the number of members was in classes I and II. The appellees maintain that the appellants had the records and refused to provide them to the appellees. Because the burden of proving numerosity and the impracticability of joinder of potential class members is upon the appellees as the proponents of the class, *see Boyd, supra,* the failure to provide the evidence necessary for such a finding would defeat the action as a class action. In fact, it appears that upon appellees' request appellants would have been willing

---

[6] Rule 23(a) of H.R.C.P., reads as follows:

(a)*Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class,.(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

to furnish this information within a reasonable time to appellees.[7]

Upon this record, we are unable to say that in the instant case the court abused its discretion in its denial of a class action as to classes I and II. *Roman v. ESB Inc.*, 550 F.2d 1343 (4th Cir. 1976).

### III.

In view of what has been said, it would seem pointless to discuss the last point relied upon by appellees in their cross-appeal that the trial court erred in granting defendant John A. Burns' motion to dismiss him from the action.

Accordingly, the order and judgment is vacated, the orders cross appealed are affirmed, and this cause is remanded with direction to dismiss the amended complaint.

*Nobuki Kamida*, Deputy Attorney General, for Defendants-Appellants, Cross Appellees.

*William S. Hunt (Hart, Leavitt & Hall* of counsel) for Plaintiffs-Appellees, Cross Appellants.

---

[7] Mr. Paco, the administrative assistant in the Governor's Office, stated in his affidavit of January 29, 1974, that such a list can be made available.